Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )
     VS.                            )   NO. CR 18-00465 MMC
                                    )
UNITED MICROELECTRONICS             )
CORPORATION, INC.,                  )
                                    )
          Defendant.                )
_____)

                         San Francisco, California
                         Thursday, May 19, 2022

          <u>**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**</u>

<u>**APPEARANCES:**</u> (Via Zoom videoconference.)

For Plaintiff:
                    STEPHANIE M. HINDS
                    UNITED STATES ATTORNEY
                    450 Golden Gate Avenue, 11th Floor
                    San Francisco, California 94102
            **BY:  LAURA E. VARTAIN HORN**
                 **NICHOLAS J. WALSH**
                 **ASSISTANT UNITED STATES ATTORNEYS**

                    U.S. DEPARTMENT OF JUSTICE
                    National Security Division
                    950 Pennsylvania Ave, N.W.
                    Washington, DC 20530
            **BY:  STEPHEN MARZEN**
                 **NICHOLAS O. HUNTER**
                 **TRIAL ATTORNEYS**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              CSR No. 12219, Official U.S. Reporter

 1 | **APPEARANCES**:   (CONTINUED)

 2 | For Defendant:

 3 |                         SKADDEN, ARPS, SLATE, MEAGHER
   |                            & FLOM LLP

 4 |                         525 University Avenue, Suite 1100
   |                         Palo Alto, California 94301

 5 |                    BY:  **JACK P. DICANIO, ATTORNEY AT LAW**
   |                         **EMILY A. REITMEIER, ATTORNEY AT LAW**

 6 |                         SKADDEN, ARPS, SLATE, MEAGHER
   |                            & FLOM LLP

 7 |                         300 South Grand Avenue
   |                         Los Angeles, California 90071

 8 |                    BY:  **MATTHEW E. SLOAN, ATTORNEY AT LAW**

PROCEEDINGS

```
1   Thursday - May 19, 2022                              9:59 a.m.

2                        P R O C E E D I N G S

3                            ---o0o---

4        THE CLERK:  Your Honor, are you ready for me to call

5   the case?

6        THE COURT:  I am.

7        THE CLERK:  Calling Criminal Case Number 18-465,

8   United States of America versus Fujian Jinhua Integrated

9   Circuit.

10     Will counsel please state your appearances for the record,

11  starting with Government counsel.

12       MS. VARTAIN:  Good morning, Your Honor.  Laura

13  Vartain, Nicholas Hunter, Nicholas Walsh, and Steve Marzen for

14  the United States.

15       THE COURT:  Good morning.

16       MR. DiCANIO:  Good morning, Your Honor.  Jack DiCanio,

17  Matt Sloan, and Emily Reitmeier for Jinhua.

18       THE COURT:  Okay.  Well, I guess, have you heard

19  anything back, Ms. Vartain?

20       MS. VARTAIN:  No, I didn't.  We have not heard

21  anything back, Your Honor.

22       THE COURT:  All right.  Has -- do you have any updated

23  information in any other form?

24       MR. DiCANIO:  Maybe slightly updated, Your Honor.

25       THE COURT:  Oh, you do.  All right.  I gather
```

1    Ms. Vartain doesn't.  So turning to defendant's counsel then.

2         MR. DiCANIO:  So, Your Honor, I could -- some things I

3    know some, things I don't know.

4         So as of this morning, Jinhua has still not received any

5    notification of the diplomatic note that was sent by

6    the Government or the diplomatic note that was sent by the

7    Chinese authorities.  And as of this morning, no one within the

8    Chinese government has instructed Jinhua not to go forward with

9    the remote testimony.

10        Based upon the information that we do, have we're not

11   sure, Your Honor -- I do want to underscore, Your Honor, that

12   we're not sure, so we're trying to piece together what we think

13   is happening.  We think what might have happened is there is a

14   bit of confusion within the Chinese government as to the nature

15   of the diplomatic note and whether the diplomatic note is

16   suggesting that the remote testimony was somehow initiated by

17   the Government of the United States or by Jinhua.

18        As we discussed, Your Honor, there would be different

19   procedures when a governmental agency -- a Government asked for

20   Chinese evidence as opposed to when a Chinese national would

21   ask.  And so our best guess is there may be some confusion

22   caused by the note as to that state of affairs.

23        Our client is making efforts to try to connect with

24   representatives within the central authority to, hopefully,

25   address those issues.  We haven't been able to do so yet, but

**PROCEEDINGS**

1    we are trying to do that.

2        But that is the latest information that I have.

3        **THE COURT:**  If nobody had heard back from the

4    authorities that was contacted by the Government, would your

5    witnesses still be willing to give remote testimony?

6        **MR. DiCANIO:**  The question I asked many times, and

7    just this morning.  And, you know, it is a little bit odd, Your

8    Honor, and I'm -- we're not sure what to make of that.

9        And I asked that question to the clients and they're

10   considering it.  On the one hand, they are very confident that

11   they have the approval that they need to move forward, but they

12   don't want to do something if there is a process in place; they

13   want to give their Government a chance to follow it.  So

14   they're discussing that right now.

15       **THE COURT:**  All right.  In other words, initially,

16   they were, you know, confident that they had the authority they

17   needed.  Now, with this new development, I can understand why

18   they might feel uncomfortable going forward because they're

19   there.  You know, the Government had some idea, if they ever

20   wanted to go to China, somebody might not give them full

21   diplomatic cordiality as a welcome, whereas, frankly, these

22   people are living there.  So it's a little different.

23       But everything was going along smoothly until we had this

24   diplomatic notice sent out.  So at this point, I'm not sure if

25   we should be waiting further, setting any kind of deadlines.

1   You know, really the problem at the moment is being created by

2   what the Government did, not what the defendant did.  And so

3   I'm not inclined to just say off with your heads to the

4   defendant's witnesses if they don't show up here.

5         And I'm really not sure what our best approach is, but we

6   can't go on indefinitely.  This is not serving anyone's

7   interest and -- you know.  But I'd like to be able to make some

8   decision in the case before the whole thing becomes some kind

9   of an ancient fleeting memory.

10        So I'm happy to hear from whatever anybody wants to

11  propose.

12        You have something going on over there, Mr. DiCanio, with

13  someone trying to get ahold of -- what, directly people that

14  they previously relied on filtered information coming down to

15  them essentially?

16        **MR. DiCANIO:**  Yeah.  I think, Your Honor, what our

17  client thinks happened is because the note came from the

18  diplomatic channel, that different agencies now within

19  the government have been brought in to evaluate the

20  communication.

21        **THE COURT:**  Okay.

22        **MR. DiCANIO:**  And given the sensitivity in the

23  relations between the two companies -- countries, everybody

24  wants to be careful not to offend, not to message in --

25        **THE COURT:**  No, I get all that.  No, I get all that.

1      It's just originally they got approval from -- from

2   whomever they got it, they got it not directly.  All right?

3   They got it coming down from person to person, whatever.

4      Now are they -- whoever it is over there who's acting on

5   behalf of your client, trying to find out what's going on, be

6   it the law firm over there or someone within Fujian Jinhua

7   itself, as an officer, director, whatever, are they trying to

8   make some kind of direct contact or are they going to their

9   people they went to before and asking them to contact -- or do

10  you know, in other words, what process they're trying to use to

11  get the information?

12      **MR. DiCANIO:**  I think the answer is all of the above,

13  Your Honor.  I think they're trying all of their connections,

14  all of their relationships, to try to get an understanding of

15  what the issue is so that we could address it.

16      **THE COURT:**  Well, what do you propose?

17      **MR. DiCANIO:**  Your Honor, from my perspective, I

18  certainly appreciate the Court's comment.  I know from the

19  diplomatic note that came from the Chinese side, they did say

20  soon.  Now, what that means, obviously, we're not sure; but it

21  feels like it hasn't even been a week and so we need to give a

22  little bit of time for that to play out.

23      And so what I would ask the Court to do is for us to let

24  the process play out a bit.  Happy to give the Court and

25  the Government as much updates as you would be inclined to

**PROCEEDINGS**

1  receive on the timing that you would be inclined to receive it,

2  and just play it out for a little bit.

3      One of challenges that the client told me this morning,

4  that I probably should have thought of, but it didn't even dawn

5  on me.  They are dealing with COVID surges in Beijing, and so

6  availability is more challenging in terms of their availability

7  to set up meetings and set up contacts.  So they're dealing

8  with that as well.  So I just -- I guess I would ask the Court

9  to give us a little bit of time to see how this plays out.

10     We remain confident that we do have the approval, and we

11  think at the end of the process that's where this will land.

12  But we have less -- no control, really, over the process.

13     **THE COURT:**  Do you have any more information on the

14  difficulty of returning home, if you will, in China, if

15  witnesses who are not otherwise precluded were able to come

16  here and give live testimony?  Any updates there?

17     **MR. DiCANIO:**  Your Honor, yeah.  Your Honor, I'm happy

18  to look into that again.  To be honest with you, since our last

19  discussion on the topic, I've kind of moved on and haven't been

20  dialed into that.  But I'm happy to revisit that and see if

21  there has been any material change in the dynamics.

22     **THE COURT:**  Okay.  Because some inconvenience is going

23  to be and already has been experienced by the government

24  witnesses, but it's going to be experienced by any witness

25  coming from that part, you know, of the world.  But you had

1   described something that was so indefinite that they had no

2   idea how long it would be before they could get back and I

3   could understand that being enough of an impediment.  But I

4   don't know if anything has changed along those lines.

5        When you say, you know, a little bit more time, what does

6   that mean to you?

7             MR. DiCANIO:  It's a fair question, Your Honor.  I'm a

8   little bit hesitant to try to put a hard deadline because I

9   don't know what's involved in the process.  And I do feel that

10  these witnesses are critical to our ability to present our

11  case, and so I'm really reluctant to say, you know, Judge, if

12  we have this date, you know, fish or cut bait, as they say.

13       That's a very hard position, particularly in a situation

14  where I don't control any of these decisions, neither does my

15  client.  So I guess I would ask the Court to continue to

16  forebear on setting that hard deadline and just let this play

17  out for a bit.

18       Our hope is to take the diplomatic note at its word, which

19  is to get back soon.  I know my clients are trying very, very

20  hard to push this forward.  I'm on then constantly about it.

21       So I guess I'd ask that we let it play out and see where

22  it develops, and reassess, you know, maybe after a period of

23  time.

24            THE COURT:  All right.  Well, that's -- I guess it

25  boils down to no answer to the question.

1    Okay.  So I'm going to see what Ms. Vartain has to say in

2  response.

3    Their concern is, by the time we get through, all their

4  witnesses are going to be so far back historically, and the

5  only people that the Court is going to see immediately before

6  having to make some decision in this case are your witnesses.

7  So I can understand.

8    They want the case to be finished, as do I, and hopefully

9  so do you at some point.

10    So if you -- I will say, if your witnesses were willing to

11  testify in the face of the uncertainty, we could give the

12  diplomatic arm some kind of a date where the Court plans to go

13  forward; it just has to do it.  So sorry, but that's what we

14  have to do, and please let us know before that if you have any

15  concerns.

16    But at the moment, I can't tell them that because your

17  folks are -- and I understand.  They don't want to anger the

18  powers that be over there.  So we're all in a little bit of a

19  catch-22 at this point.

20    But let me see what Ms. Vartain says.

21    **MS. VARTAIN:**  Your Honor, I was going to suggest that

22  we do sort of similarly to what the Court just suggested,

23  though I hear the wrinkle.  And by this I mean that we send a

24  follow-up note sort of confining what "soon" is.

25    And I hear Mr. DiCanio on wanting to not have that be

1   immediately; though, I do think, given that it is summer, and

2   convening this large group of people for a stretch of time that

3   is probably more than one week, more like two weeks, is

4   difficult both -- obviously, the Court schedule, but all of the

5   involved parties.  And so I think some certainty in order to

6   reconvene for a period of two weeks is necessary.

7        And I would suggest that the Court set a date certain that

8   is far enough out that Mr. DiCanio has time to let the process

9   play out, but not so far out that the concerns the Court has

10  rightly addressed from the Government's perspective are -- you

11  know, there is a point that is too far.

12       So the date I would suggest is on or about June 21st.

13  I believe June 20th is a federal holiday.  And what the

14  Government would propose to do is send a follow-up note saying

15  that on or about that date the Court will be going -- will be

16  going forward with the case, and any answers need to predate

17  that.

18       **THE COURT:**  Okay.  Let's take a look at where we are

19  then, right now.  Let's just call it the 20th of our month,

20  just because -- just make it the end of the week for a moment.

21  So you're talking about, one, two, three, four -- a little over

22  four weeks.  That's not unreasonable by any means.

23       What would your note say?  Would it say something about

24  that date or would it just ask or make sure they understand

25  this is voluntary testimony as opposed to testimony demanded by

1   an opposing party?

2        What are you thinking about that the Government might do

3   to shake things up a bit in the middle?

4        **MS. VARTAIN:**  Yeah.  Well, I do think our initial note

5   was clear, but I will certainly reiterate that this is

6   voluntary from the defense witness's perspective.  I would say

7   that the Court can't wait forever, and so would need a response

8   prior to that date.

9        I would like to put a pin in and come back to what would

10  happen if it were a "no" response, but I'll circle back to

11  that.

12       And I'm obviously happy to take any feedback the Court or

13  Mr. DiCanio has as to things -- other things to include in the

14  note.

15       But I think the key things are time frame concerning what

16  "soon" can be, and the understanding that the Court intends to

17  reconvene the trial on a date certain.

18       **THE COURT:**  Are you anticipating we would reconvene on

19  the 20th -- or 21st?  If -- the 20th, I think, maybe, is

20  Juneteenth, the 19th being the holiday, and then the Monday,

21  and then the 21st.  You're thinking that we would start with

22  the remote testimony, if the folks are willing to do it, on

23  that date?

24       Now, I have to tell you, this is going to really put me in

25  a bind if we do this.  I have a case that, recently, one of the

1  parties -- it's a civil case -- asked for a continuance, over

2  objection, and without, in my view, showing good enough cause.

3  So I said:  Absolutely not.  We're going to trial on the 21st.

4       Okay.  Now, you know, I could, I guess, say:  Well, what

5  can I do?  I guess you've got your continuance anyway.

6       I want to make sure, though, that we don't go into when

7  I'm leaving, although if that had to happen, at least we don't

8  have a jury.  I don't know what we would have done in this case

9  if this case were being tried to a jury.  I guess it would have

10 been mistried at some point or something; I really don't know.

11 It would have been a real nightmare one way or the other.

12      So we're kind of keeping it together with, I don't know,

13 Scotch tape and a couple of staples here.

14      But anyway, I think that I would still want to give this

15 case the priority.  First of all, it is a criminal case.

16 Second of all, it's the older of the two cases in the sense

17 that it's already going.

18      And I would just have to tell them:  Well, I guess, look

19 where we are.

20      If that happens.

21      Okay.  So, I guess, back to you, Mr. DiCanio.  There is a

22 fairly reasonable proposal being put on the table.  And do you

23 have any remarks one way or the other in that regard?

24      And by the way, if anybody else from either side of this

25 case has some brilliant idea, just because you weren't the

1  first to speak on behalf of your client, I don't want to mean

2  you could not chime in with something rather than wait until

3  later and tell somebody about it when we're already through.

4      All right.  But I'll guess go back to Mr. DiCanio to start

5  with.

6          **MR. DiCANIO:**  Thank you, Your Honor.

7      Your Honor, I certainly understand all of your comments,

8  as well as the comments of Ms. Vartain, and I certainly

9  appreciate the challenges.

10     I guess, when I step back and I think about trying a case

11  during COVID, it required, I think, a lot of patience, a lot of

12  flexibility.  And the Court and the Government have shown an

13  awful lot, and I very much appreciate it.

14     The part that I'm pausing on, though, Your Honor, is the

15  idea that -- having a hard deadline.  And I appreciate that

16  it's been pushed out a bit to give us some time to work this.

17  I really do.  But, what we're raising is really due process

18  concerns, and our ability to really tell our full case to

19  the Court.

20     And I don't know what's going to happen over the course of

21  the next couple of weeks.  And I don't feel like we should put

22  a time limit on those due process concerns.  Even though I

23  understand the comments that the Court and the Government have

24  made, and so it's hard for me to say, yeah, okay, that makes

25  sense, when I feel very strongly that we really want these

**PROCEEDINGS**

1    witnesses to testify.  We think that they will speak to the

2    critical issues of the case and inform the Court as to a fair

3    and just result.  And any kind of decision that deprives us of

4    that ability is hard for me to say is okay.

5         That's kind of where I'm coming from, Your Honor.

6         **THE COURT:**  Well, I haven't said at the moment that if

7    we set that date that there might be good cause for a

8    continuance.  But, I think we have to set a date if we're going

9    to try to put some kind of framework around the word "soon,"

10   which is what the Government received as a, you know, response

11   to their diplomatic note.  So I think we need to set a date to

12   have the case pick up again.  And I will make -- you know, I'm

13   not going to give any advisory opinions about what I would do

14   if we come up on that date and we haven't heard anything,

15   you know.

16        **MR. DiCANIO:**  I understand, Your Honor.  And I

17   appreciate you considering my view.

18        And I certainly understand where the Court is coming from,

19   and I particularly appreciate that Your Honor is leaving open

20   the possibility that circumstances may -- may indicate a need,

21   a good cause for further continuance, but you want to have a

22   date set.

23        So I would just submit, Your Honor.  I made the comments I

24   would want to make to Your Honor.

25        **THE COURT:**  Yeah.

1        My thought is that if it's not an absolute, you know,

2   statute of repose, so to speak -- okay? -- should we stay with

3   a date as far as off as proposed or should we pull it back a

4   little bit?  I don't know.

5        I guess -- I guess we could leave it at that date.  That's

6   giving China quite a bit of time, it gives them over a month,

7   to respond, and hopefully sooner, rather than down to the wire,

8   you know.

9        Let me hear back from Ms. Vartain for a moment.  She'd

10  like it to be, you know, a deadline and, you know, if at that

11  point you don't have the people, case -- you know, defense

12  rests.  And I don't know that I really feel comfortable making

13  that order at this moment.  Okay.

14       **MS. VARTAIN:**  Yes.  Yes, Your Honor.

15       I understand the Court, and I'm not asking for an order;

16  though, I do think that certainly due process is not unlimited

17  in terms of the duration of the continuance.  And at a certain

18  point, I do think it will be relevant to ask whether there is a

19  likelihood that the witnesses would, in fact, testify; but I

20  understand that we're not there at this moment.

21       And so I do -- I do think if the Court has suggestions as

22  to what you would like conveyed in the diplomatic note, that

23  would be helpful to the Government, and we would be happy to

24  take those.

25       **THE COURT:**  Well, in other words, why I feel we need

**PROCEEDINGS**

1   to move forward.  Well, I think some of the reasons are is the

2   case has been pending since 2018, and involves serious issues;

3   that these witnesses are critical witnesses for the defendant

4   that is essentially a Chinese company run by the Chinese

5   government.

6        I think pointing out to them that this helps them to have

7   these witnesses testify, it would be important -- I'm sure you

8   would think of that anyway.  But from the Court's standpoint,

9   the need to move the case, that we have many other cases; we

10  can't just have this case in limbo, where we don't know where

11  we can schedule other cases.  They're waiting for us to finish

12  this case so that they can try their case.  Just whatever

13  really goes along with being able to conduct an orderly

14  scheduled calendar, but that -- I think that concept, the age

15  of the case, the importance of the case, the importance of the

16  witnesses to the defendant, I think would be helpful.

17       And to make clear, I think that the idea that you're not

18  trying to get these people there, you know.  They are trying to

19  put them forward, and because of the COVID restrictions and

20  health concerns, they can't leave.

21       And so, with all of that, I think, at least it puts

22  forward a good argument for approval, you know.  And hopefully

23  one that, given the need to go forward, we'd like to get as

24  soon as practicable, you know, recognizing all the difficulties

25  that they might have in struggling with COVID at this time

1    themselves.

2         **MS. VARTAIN:**  And just to --

3         **THE COURT:**  Go ahead.

4         **MS. VARTAIN:**  Do I understand the Court correctly that

5    the 21st is the date that you would, at least at this time, be

6    anticipating that we would go forward?

7         **THE COURT:**  Right.  Right.  That -- we got that

8    witness back in their hotel room, somebody has woken them up

9    and told them they have to testify.  All right.  So --

10        **MR. DiCANIO:**  Your Honor, can I ask -- it might be

11   helpful if we had a chance to review the language of the note,

12   because I think we might be able to guide this in a way that

13   might be more helpful.

14        And I'll give you an example of why.  If you look at the

15   declaration --

16        **THE COURT:**  No.  Just let me stop you for a minute.

17        This may be a perfectly good point, but Ms. Vartain had

18   some concern about, I don't know, the ability to do that with

19   whatever, I don't know, concerns they have about

20   confidentiality or whatever.

21        I'm sure that any helpful suggestions that you might make,

22   in terms of wording or otherwise, ordinarily would be fine if

23   you thought they would help to make the case go faster and

24   Ms. Vartain agreed that that was a good change.  But, I don't

25   know that she can show it to you.

**PROCEEDINGS**

1    So I think that's something that it's either absolute

2    can't show it to you, or not.  And so that would be the

3    question, I guess.

4    Ms. Vartain, is this something that you're precluded from

5    showing the other -- you know, outside of who you gave it to

6    and the people in your office, for example?

7    **MS. VARTAIN:**  Yeah.  I think that would be

8    extraordinarily improper --

9    **THE COURT:**  Okay.

10    **MS. VARTAIN:**  -- would be the best way to say that.

11    **THE COURT:**  Okay.  You can let her know what you feel

12    is important, and if there is anything there.  But ending up

13    being editor is not going to -- you're not going to get to be

14    editor.

15    And I just have to assume that the Government,

16    particularly knowing now that there is some response that they

17    got that wasn't, Oh, yeah, don't worry about it, we already

18    gave approval, that they have just as much interest in getting

19    this point made in the most favorable way to the position of

20    getting the approval, and getting it in a timely fashion.

21    So it's often good to have a fresh pair of eyes to look at

22    something, but I don't think it's going to happen from what she

23    said.

24    **MR. DiCANIO:**  I understand, Your Honor.  And maybe

25    what we could do is, without seeing the draft, maybe I could

**PROCEEDINGS**

 1   offer some thoughts.

 2           **THE COURT:**  Sure.

 3           **MR. DiCANIO:**  But the level of sensitivity between the

 4   diplomatic channels of these two countries is so extreme that,

 5   you know, even when you look at the declaration that was

 6   submitted, it's phrased -- it was phrased not so much as a

 7   notice but, If you have a problem, let the Court know, and that

 8   triggers all sorts of unintended consequences.  So we just want

 9   to maybe try to be a positive, productive player in this --

10           **THE COURT:**  Okay.

11           **MR. DiCANIO:**  -- to make sure we don't have those

12   issues.

13           **THE COURT:**  Oh, I'm sorry.  I understand.

14       What I suggest under the circumstances is that -- not in

15   the course of this hearing, but that you convey whatever

16   thoughts you've got about wording, if you will, from whatever

17   experience you've had in this or the office that you've been

18   dealing with in China has had in this particular area.  And she

19   can either, you know, use that suggestion or not, as she sees

20   fit.  And you might say, you know, If you've put it this way,

21   it may be better to put it that way -- whatever you want to say

22   in that regard without her having to tell you what she actually

23   said in it.  It's more cumbersome, but that may be the best

24   that you're going to get out of it.

25       And as I say, on this one point, I think everybody is

1  reasonably aligned that we want to get it resolved.  And so --

2  and favorably, if possible.

3  I mean, they don't want to sit here -- if they have a

4  conviction, they don't want you up there appealing, I didn't

5  get to call my witnesses, you know, this whole thing was a

6  horrible abuse of process.  And my poor client didn't get to

7  defend themselves.

8  But they want to get the trial over, and I do too.  And

9  I'm not saying there's going to be a conviction one way -- or

10  what the result is going to be.  I don't even have any idea how

11  this is going, what your people are going to say.  All I'm

12  saying is that everybody wants as clean a trial as we can

13  have -- okay? -- with everybody having a fair shot at

14  presenting their case in the best possible light.  So -- okay.

15           MR. DiCANIO:  Thank you, Your Honor.

16           THE COURT:  All right.  So where are we then?  Do we

17  now conclude with me ordering, at this point, the case is

18  continued to June 21 for further testimony by remote or in

19  person, whichever is available?

20           MS. VARTAIN:  Thank you, Your Honor.

21  I have one question or thought for the Court, which is to

22  the extent -- to the extent that we may not have an answer, or

23  to the extent that we might get a "no" response, "Please don't

24  conduct these proceedings, we don't want a United States Court

25  taking testimony from witnesses within the PRC," I thought it

1    might be advantageous to the Court to have any briefing that

2    the parties might want to submit on what that either ambiguity

3    or certainty with a "no" would be.  Because I think the Court

4    might have to confront either option, and that would mean that

5    if we brief it between now and the 21st, the Court would have

6    the benefit of that, if we hit the 21st in either scenario.

7         **THE COURT:**  I'm not sure -- I mean, I do think we

8    should have some kind of date before the 21st to find out

9    what's going on and see if any developments have occurred, even

10   if we don't have a full answer.

11        But -- but the briefing, I'm not sure -- what's the issue

12   that you're thinking of briefing before it's, you know,

13   actually a reality?

14        **MS. VARTAIN:**  Yeah.  Well, a while back, I think we

15   had a declaration submitted by Ms. Reitmeier about some cases

16   suggesting there was a balancing test that the Court would go

17   through.  And I understood that to be if PRC or -- for example,

18   said no.

19        If I'm correct on that, and the defense position would be

20   that the Court could proceed even with a "no" from the PRC,

21   I -- we have responses to that.

22        **THE COURT:**  Oh.  Okay.

23        Yes.  There were, in some instances, some cases that

24   apparently said, even in the face of opposition by the other

25   Government, that the Court could weigh various factors in

1    deciding whether to go forward or not.

2          I don't know if we want to get that -- I mean, maybe --

3    what -- what do you perceive the issue to be?  In other words,

4    let's say there are cases that were cited that said, "Yeah,

5    the Court can consider that."  At the point -- that point, it

6    wasn't an issue for us because we didn't have any contrary view

7    by the country in which one was trying to obtain evidence.

8          But let's say it is a balancing act or, you know,

9    balancing test, I guess, not act.

10         Then, do you just -- you just, it sounds like, want to

11   weigh in why it should balance out one way or the other in this

12   case based on whatever that situation is that we haven't yet

13   encountered; in other words, we don't know if it's like we

14   haven't heard from them, or we have heard from them and they

15   said, "No way do we want these people to testify remotely" --

16   you know, I mean, I'm not just -- I don't think we should have

17   a bunch of cases floating in in the abstract.

18         So it may be premature.  I can understand you saying, "Oh,

19   well, we're down with this time now, why don't we use it to do

20   some briefing," but I'm not sure that we've got an issue to

21   brief yet.

22         I guess, if I had to phrase it, the issue is:  Should the

23   Court go forward in the face of a denial of Government

24   approval?

25         Frankly, that may be a moot question, Ms. Vartain, if the

1  people who stand to perhaps suffer the repercussions of that in

2  a more direct way weren't willing to go forward anyway.

3       So that -- I don't think it -- I am sure that you have a

4  lot of other work that you could do other than brief this, and

5  that everybody else does too.

6       So I'm just I'm trying to think and -- kind of a couple of

7  things.  Maybe just have, you know, a status conference of some

8  sort in our case just to get an update, again, on some -- some

9  date that you think might be a reasonable in-the-middle-of-it

10 date just to kind of hear what's going on.

11            MR. DiCANIO:  Your Honor, may I make a suggestion?

12            THE COURT:  Sure.

13            MR. DiCANIO:  Could we tie that status conference with

14 scheduling the hearing on the Rule 29?  We're filing our reply

15 in about a week now -- I forget the dates -- but it seems like

16 we should have the hearing in this period while we're waiting

17 to resume?

18            THE COURT:  Oh, I don't know.  Not necessarily.  I

19 mean, we could.  But when are you filing again?  When did you

20 plan to file?

21            MS. REITMEIER:  We have until the 29th.

22            MS. VARTAIN:  We have until the 29th, Your Honor.

23 We're trying to get it on file sooner, but the date we set is

24 the 29th.

25            THE COURT:  Oh.  So the 29th of -- wait a minute.

1   What month are you talking about?  Is it May?

2          MR. DiCANIO:  Yes, Your Honor.

3          THE COURT:  That's what I thought, but May 29 is a

4   Sunday.

5          MR. DiCANIO:  I think, you set it for that date.  We

6   intended to file it on the Friday before, Your Honor.  I didn't

7   have my calendar.

8          THE COURT:  I actually set something on a Sunday?

9   Nobody said, "Hey, that's a Sunday"?  Okay.

10         MR. DiCANIO:  I think, Ms. Reitmeier sent me a note

11  and I didn't see it, Your Honor.

12         THE COURT:  Oh.  I don't know.  Ms. Geiger didn't say

13  anything either and she is kind of the keeper of the calendar,

14  but okay.  Anyway -- and you have until then to file it, but,

15  you know, I'm going to need some time to go over these papers.

16  If by the time you do that, we're already up to the date of the

17  trial that we've now continued to, you may get it on file a

18  little sooner than the 29th.  But I've got 60 pages, 60 pages,

19  and I haven't set what your reply was limited to, so I have no

20  idea how long that's going to be.  But, let's say that,

21  you know, it's something between 30 and 60 pages.

22         And so I've already -- yes -- read these pages in the

23  first instance.  But I would want to go over them again.  I

24  need to review, perhaps, evidence that's referred to.  I

25  have -- I don't think that I can guarantee that I've -- we

1  would have a meaningful hearing before the 21st, because what

2  would be the point of the hearing?  Certainly, I don't want you

3  to get up and argue your 60 pages, or from your standpoint,

4  Mr. DiCanio, 60-plus.

5      So the purpose of the hearing would be if I need to follow

6  up with you with some questions and, perhaps, you know, point

7  some things out that are particularly well said by one side or

8  the other, and what does the other side have to say about that

9  just beyond what's in their papers.

10      So I don't want to set a hearing beforehand because I

11  don't think it would necessary be productive.  And everybody is

12  going to be, if possible, gearing up to actually have these

13  witnesses testify, all going on at the same time.

14      Now, let's try and -- so the answer to that is, you know,

15  file, and we'll set a hearing afterwards if necessary.  I don't

16  know if a hearing is necessary; there probably should be a

17  hearing.

18      Then -- but for today, let's try and pick some date that

19  might be a reasonable date to have a status conference.  Today

20  being the 19th is -- okay.  I don't know -- is the 26th -- is

21  there -- two weeks is, I guess June 2nd?

22      Two weeks from today is June 2nd.  Is that too soon or is

23  that a date that we might, at least, try and see what's going

24  on?  It wouldn't hurt even if we don't know anything, at least

25  we'd know that.

**PROCEEDINGS**

1           **MR. DiCANIO:**  Would the Court be willing to maybe push

2    it over to the 6th, just to give us a little bit more time?

3           **THE COURT:**  I could do that.  That's the Monday,

4    I guess; right?

5           **MR. DiCANIO:**  Correct, Your Honor.

6           **THE COURT:**  I can, if people are available then.

7           **MS. VARTAIN:**  That's fine with the Government,

8    Your Honor.

9           **THE COURT:**  Okay.  So I'll continue the matter for

10   another status conference to Monday, June 6th.  We'll just say

11   10:00 again.  That seems to work for everybody.

12      And, well, I just hope we get some kind of good news for a

13   change.  I'd like to get some news, but I'd like it to be good

14   news.

15      I don't know if there's anything else we can do.

16      I appreciate your input on this, Ms. Vartain, that's

17   helpful and -- yeah.

18      Any other suggestions before we close it out again?

19           **MR. DiCANIO:**  Not from us, Your Honor.  Thank you.

20           **THE COURT:**  Okay.  Nothing further from

21   the Government?  That's it?

22           **MS. VARTAIN:**  No.  Thank you, Your Honor.

23           **THE COURT:**  That's it.

24      Well, all right.  Six great minds on both sides and this

25   is where we are.  All right.

PROCEEDINGS

```
1        So okay.  All right.  See you Monday on the 6th.

2            MR. DiCANIO:  Bye, everyone.

3            MS. VARTAIN:  Thank you, Your Honor.

4            THE COURT:  Have a nice weekend.

5            THE CLERK:  Court is in recess.

6            (Proceedings adjourned at 10:39 a.m,)

7                       ---o0o---

8

9                 CERTIFICATE OF REPORTER

10        I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13   DATE:   Friday, May 20, 2022

14

15

16

17

18   _____
     Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
19          Official Reporter, U.S. District Court

20

21

22

23

24

25
```