**Pages 1 - 12**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>VS. )<br>)<br>UNITED MICROELECTRONICS )<br>CORPORATION, INC., et al., )<br>)<br>Defendants. )<br>_____) | **NO. CR 18-00465 MMC** |

San Francisco, California
Monday, July 25, 2022

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom videoconference.)

For Plaintiff:
        STEPHANIE M. HINDS
        UNITED STATES ATTORNEY
        450 Golden Gate Avenue, 11th Floor
        San Francisco, California 94102
  **BY: LAURA E. VARTAIN HORN**
      **NICHOLAS J. WALSH**
      **ASSISTANT UNITED STATES ATTORNEYS**

        U.S. DEPARTMENT OF JUSTICE
        National Security Division
        950 Pennsylvania Ave, N.W.
        Washington, DC 20530
  **BY: STEPHEN MARZEN**
      **NICHOLAS O. HUNTER**
      **TRIAL ATTORNEYS**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              CSR No. 12219, Official U.S. Reporter

1  **APPEARANCES**: (CONTINUED)

2  For Defendant Fujian Jinhua
   Integrated Circuit:
3                           SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
4                           525 University Avenue, Suite 1100
                            Palo Alto, California 94301
5                      BY:  **JACK P. DICANIO, ATTORNEY AT LAW**
                            **EMILY A. REITMEIER, ATTORNEY AT LAW**
6
                            SKADDEN, ARPS, SLATE, MEAGHER
7                               & FLOM LLP
                            300 South Grand Avenue
8                           Los Angeles, California 90071
                       BY:  **MATTHEW E. SLOAN, ATTORNEY AT LAW**

|   |   |
|---|---|
| 1 | <u>Monday - July 25, 2022</u>                                    10:05 a.m. |

                    P R O C E E D I N G S

                         ---oOo---

       **THE CLERK:** Calling Criminal Case Number 18-465, United States of America versus Fujian Jinhua Integrated Circuit.

    Will counsel please state your appearances for the record, starting with Government counsel.

       **THE COURT:** You're muted, Ms. Vartain.

       **MS. VARTAIN:** Good morning, Your Honor. Laura Vartain, Nic Hunter, Steve Marzen, and Nick Walsh for the United States.

       **THE COURT:** Okay. Thank you.

       **MR. DiCANIO:** Good morning, Your Honor. Jack DiCanio, Matt Sloan, and Emily Reitmeier for Jinhua.

       **THE COURT:** All right. Good morning.

    I don't know how much good I'm going to be after my European travels, and returning to succumb to COVID immediately upon my return, no matter how careful I was in the process. So it's been a few days now and, hopefully, I'm on the mend.

    Anyway, it doesn't look like anything's happened in my absence, except to have the actual letter filed that was described by Mr. DiCanio at the last calling of the case.

    I was expecting, perhaps, a somewhat modified or maybe just edited a bit submission of the proposed letters rogatory

1   by the defendant.  I didn't get anything.  But in the interim,
2   having now received the actual response from the People's
3   Republic of China, it isn't so much a concern about my saying
4   if, I do issue the letter, that I was told this.  Now we have
5   it, or so such is being reported to me.
6       But -- so why are we having the conference?  Okay.
7           **MR. DiCANIO:**  Your Honor, I think we did submit,
8   probably shortly before the hearing, a revised letter rogatory.
9           **THE COURT:**  This hearing?
10          **MR. DiCANIO:**  Yes, Your Honor.
11          **THE COURT:**  Well, I've --
12          **MR. DiCANIO:**  I think about a half hour ago.
13          **THE COURT:**  Well, I've spent about the better part of
14  the time I've been here this morning reading all kinds of
15  different things.
16      Oh.  No.  I mean, I have what was filed before I left, but
17  I don't have -- is this supposed to be -- I thought we -- well,
18  maybe this was all that was being discussed about being
19  revised; in other words, nothing since this one.
20          **MR. DiCANIO:**  Correct, Your Honor.
21          **THE COURT:**  Oh, okay.
22          **MR. DiCANIO:**  And I know that in the one that we filed
23  just this morning, I believe -- and Ms. Vartain could correct
24  me -- I believe we sent it over to the Government, and they had
25  no further comments on language.  And I think that's the one

1   that we filed, probably, about 45 minutes ago or so.

2   **THE COURT:** Okay. I don't have it.

3   I mean, I have the one from July 1. I do not have the
4   more recent one. Okay. So I wasn't wrong that you were going
5   to try to clean it up and maybe take a look at it, but -- okay.

6   Somebody is now, at my request, going to go try and find
7   that.

8   So maybe I'll confirm with Ms. Vartain, since she's seen
9   it and I have not, whether there was anything that jumped out
10  at you regarding its content.

11  **MS. VARTAIN:** Your Honor, the reason the Court hasn't
12  seen it is that I think it was filed while I've been on this
13  conference. So I saw it pop up while I was on Zoom.

14  And it does reflect the Government's revisions. And so
15  the Government does oppose the Court filing -- sending the
16  second letters rogatory; but if the Court is going to send the
17  second letters rogatory regarding live testimony, we concur
18  with the language in what Jinhua just filed.

19  **THE COURT:** Okay. All right. So in other words, if I
20  overrule the objection, then this is as good language as we can
21  come up with at the moment.

22  All right. So I'll take a look at it, as long as somebody
23  can go find it for me in the. . .

24  **MR. DiCANIO:** Your Honor, can I raise one issue on the
25  letter rogatory?

1     And I apologize to both you and the Government on this.

2     When I was reading it before the hearing, I notice that we
3 forgot to put a reference in about the safe passage agreement
4 that the Government had given us before the trial started.  And
5 as I read the Ministry of Justice letters, there is some
6 reference to that.  And so I'd like to propose some language to
7 Ms. Vartain that I think she'll be comfortable with.  It just
8 tracks the letter.  And then maybe we can resubmit the letter
9 to you in an hour or so.

10     **THE COURT:**  Okay.  Right now, I'm just waiting for
11 somebody to try and find whatever the current one is.

12     Do you have someplace that you would want to insert that?

13     **MR. DiCANIO:**  Maybe I can turn it over to
14 Ms. Reitmeier, who probably has the letter handy.

15     **THE COURT:**  Okay.  So, Ms. Reitmeier, if you can see
16 if there's someplace where, in the letter, it might fit in to
17 add language about safe passage.

18     And is this language we used before in earlier -- no,
19 because we never had one on live testimony.

20     **MR. DiCANIO:**  Correct, that's the reason.

21     And, Your Honor, I apologize.  We missed it and it just
22 dawned on me as I was looking at the papers this morning.

23     **THE COURT:**  Are you saying that the Chinese government
24 had a concern about safe passage?

25     **MR. DiCANIO:**  They did not raise it, but if you look

1  at their letters, they talked about making sure there were
2  conditions that would assure the safety of the witnesses'
3  travel, which I think is covered by the language that the
4  Government has already agreed to.
5       I just want to make sure that we don't get in a situation
6  where we send a letter, then they ask a clarifying question,
7  and we lose time.
8       **THE COURT:** Safety -- I don't know if that's what they
9  meant.
10      What did you think they meant before you thought about
11 this, you know, safe passage idea?
12      **MR. DiCANIO:** Yeah.  So as I read their letters,
13 they're talking about these witnesses not getting arrested if
14 they were to come to the United States --
15      **THE COURT:** Oh.
16      **MR. DiCANIO:** -- that they'd be able to travel,
17 testify, and go home, and not be arrested for any pre-travel
18 offenses.
19      Now, if they commit something in the United States, that's
20 carved out, which, I think, is consistent with the safe passage
21 letter that the Government had given us before the trial.
22      **THE COURT:** Okay.  Now, you understood they were
23 asking about that before, but you have something in the current
24 letter or nothing in the current letter regarding --
25      **MR. DiCANIO:** I realize we don't, Your Honor.  So we

1  just want to add a sentence or two.
2          **THE COURT:**  Okay.  You have nothing?
3          **MR. DiCANIO:**  Correct.
4          **THE COURT:**  It's not like you're sort of embellishing.
5          **MR. DiCANIO:**  Correct.
6          **THE COURT:**  Ms. Reitmeier, did you come up with
7  anyplace you want to plug this in?
8          **MS. REITMEIER:**  I did, Your Honor.
9      In the letter, there is several kind of embedded tables.
10 There is one embedded table where it just lists the witness's
11 name, address, gender, and occupation.
12         **THE COURT:**  All right.  That's on page 6 --
13         **MS. REITMEIER:**  Six.
14         **THE COURT:**  -- to 7, I guess.  Yeah.
15         **MS. REITMEIER:**  I think we can put it right before
16 that table, possibly.
17         **THE COURT:**  Do you have any proposal in mind at the
18 moment?
19         **MS. REITMEIER:**  We do, Your Honor.  We're running it
20 by our client to make sure they're okay with it, and then we'd
21 like to run it by Ms. Vartain as well.
22     It mostly, I think, will track the language of the -- the
23 safe passage letter.
24         **THE COURT:**  Okay.  All right.
25     It's probably a good idea to cover that, which is a means

```
 1   of reassurance to the Chinese government that their citizens
 2   aren't going to be put in jail over something.
 3        Okay.  I haven't had a chance to go over the most recent
 4   revision, but if everyone is happy with it, in all likelihood,
 5   I'm going to use it.  Of course there will have to be a new
 6   submission with the extra language, once you're all on board
 7   with whatever the best way is to phrase that.
 8        Okay.  So let's assume that you did manage to get some
 9   work done on this, then, and that I -- once I get whatever the
10   next form is that, hopefully, there's some consensus about its
11   language.
12        I once I have it, I can get it out pretty quickly.
13        And, Ms. Geiger, you're going to be here in the federal
14   building today; right?
15        So if we can do this today, then she's here because she
16   won't be back here after that for a while.  So that would be
17   helpful -- in my absence, not only that, you know, a TRO came
18   in with some harbormaster in Sausalito is trying to destroy
19   somebody's boat that's docked out in the middle; and according
20   to the harbormaster constitutes debris and doesn't belong
21   there.  So, anyway, we'll see what we do with that.
22        Anyhow, so what else can we do, if anything, on your case
23   before we just take a break.  We can set another status
24   conference if necessary; just because at some point, hopefully,
25   something will happen.  And then if it doesn't happen by then
```

1   you can just, you know, have a brief stipulation to move the
2   date.
3            **MR. DiCANIO:**  Sure, Your Honor.  Can I maybe suggest
4   two weeks?
5            **THE COURT:**  Yeah, whatever sounds good to you.
6       And then, Ms. Vartain, how does that strike the
7   Government?  That's with the idea you're going to kind of agree
8   with whatever this additur is and then I -- and then I actually
9   get this thing rolling today.
10           **MS. VARTAIN:**  Your Honor, our date to resume trial
11  testimony is August 22nd, so I would propose sufficiently in
12  advance of that maybe Wednesday, August 10th.
13           **THE COURT:**  That's okay.  I mean, my feeling is the
14  chances of getting this all really wrapped up by August 22, is
15  not looking so great now that we got this communication from,
16  you know, the PRC, but -- whatever we have to do in response to
17  it.
18       But, sure; if everybody is available.  Let me take a look.
19       That's a Wednesday; is that right, August 10?  What, at
20  10:00?
21           **MR. DiCANIO:**  It's fine with us, Your Honor.
22       I could tell you that if we, probably, waited a week
23  after, we would have a little bit more information I would
24  think.  But happy to do it on the 10th as well.
25           **THE COURT:**  Well, we can say the 10th and -- look, if

1   we haven't heard anything back from the PRC by the 10th -- I
2   mean, these people still have to -- if they're going to be here
3   on the 22nd, they would have to have made arrangements.  I
4   don't know.  They may have to make them in advance with some,
5   hopefully, you know, cancelable or at least movable
6   arrangements.
7       I mean, I just have to assume they're going to let them
8   come, but -- okay.  In the meantime, we can say --
9           **MR. DiCANIO:**  Your Honor, I think our biggest
10  challenge -- Your Honor, obviously, our biggest challenge is
11  getting the letter to them.
12      I agree with you.  I have a very strong feeling, like,
13  these -- both of these things are going to be approved.  The
14  challenge is just the speed at which we get it to them so they
15  can process it.
16          **THE COURT:**  Let's do the 10th.  Now, if it turns out
17  nothing has happened -- and I'm hoping you and Ms. Vartain and
18  anybody else on your mutual teams can -- you know, respective
19  teams, rather -- would work out whatever has happened to that
20  point.  And then, once you know what each other's position is,
21  if it doesn't looks like we ought to do anything on the 10th,
22  then you could actually just maybe ask Ms. Geiger if we could
23  push it back a week, and that would probably be fine.
24      You know, I can't -- I don't know id some odd thing
25  happened between now and then as far as my calendar goes, but

1  assuming it doesn't.
2      So in the meantime, we'll say the matter will stand over
3  to August 10, at 10:00 for further status.
4          **MS. VARTAIN:**  Your Honor, does the Court have another
5  time?  I have a conflicting court appearance at 10:00 a.m.  I
6  could probably do 11:00 or later.
7          **THE COURT:**  11:00, if that's okay with everybody else.
8          **MS. VARTAIN:**  Thank you.
9          **MR. DiCANIO:**  Fine with the Defense, Your Honor.
10         **THE COURT:**  Okay.  So we'll say 11:00.  All right.
11         **MR. DiCANIO:**  Thank you, Your Honor.
12         **THE COURT:**  All right.  Thanks everyone.
13         **MR. DiCANIO:**  Feel better.
14         **THE COURT:**  Thank you.  I hope I do.  Okay.  Bye.
15         **THE CLERK:**  Court is in recess.
16             (Proceedings adjourned at 10:19 a.m.)
17                         ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Monday, July 25, 2022

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court